UNITED STATES of America,
Plaintiff-Appellee,

v.

Marc Paul FANNON,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Paul Howard GUMERLOCK,
Defendant-Appellant.

Nos. 76–2700 and 76–2732.

United States Court of Appeals,
Ninth Circuit.

Feb. 21, 1978.

Before CHAMBERS, KOELSCH and HUFSTEDLER, Circuit Judges.

CHAMBERS, Circuit Judge, dissenting:

The original opinion in these airport search cases is reported at 556 F.2d 961 (9th Cir. 1977). The government filed a petition for rehearing and alternatively suggested a rehearing en banc. On the petition for rehearing by the panel, I became convinced I was wrong in originally concurring, so I wrote the following:

"CHAMBERS, Circuit Judge, dissenting from denial of rehearing by the panel:

"I previously concurred in this matter but it now appears to me that I should have dissented. As Justice Jackson once said, quoting Baron Bramwell, 'The matter does not appear to me now as it appears to have appeared to me then.' *McGrath v. Kristensen*, 340 U.S. 162, 178 [71 S.Ct. 224, 95 L.Ed. 173] (1950).

"In my concurrence I stated that I believed that *United States v. Davis*, 482 F.2d 893 (9th Cir. 1973) compelled the result. I also expressed the fear that cases such as this might 'ultimately result in the abolition of the judge-made exclusionary rule, a rule I would not like to see abolished completely but limited according to some standards.' I still have that concern about the exclusionary rule. But I am no longer convinced that *Davis* compels the majority position.

"*Davis* considered the search of a passenger who was about to board an airliner, and his subsequent prosecution under Section 1472(1) of Title 49 which, among other things, imposes criminal penalties for carrying weapons or explosives aboard aircraft. The search in this case was of property left by a consignor at an airline freight office. The majority in this case, in holding that all searches by any airline employees now precipitate Fourth Amendment protections, cites *Davis* and relies on language inserted into Section 1511 of Title 49 after *Davis* was decided. The majority reads this amended statute, which is quoted in full in the majority opinion, as governmental authorization to airline personnel to search and thus as a conferring on them of governmental duties. But the statute does not purport to confer authority to search; it merely gives the airlines the authority to refuse to transport persons or property when consent to search is not given. Anyone, whether a passenger or a consignor, can refuse consent; all he loses thereby is the ability to use the services of the airline.

"Moreover, I cannot accept the majority's leap from the enactment of this 1974 amendment to the conclusion that it supplants the preexisting right of carriers to search based on common law or tariff. Many searches are made for wholly private purposes, as the majority recognizes, e. g., to identify the shipper, to determine if the right tariff has been employed, to assure against pilferage. Such searches are now automatically labelled by the majority as affected with a 'governmental' interest. And in fact they are not

'governmental' at all. I find no virtue in proceeding by means of the fiction of a presumption of governmental interest, when we can and ought to be looking for the facts in each case. For instance, the court in *Davis* was considering search by an airplane employee who was stationed at or near the loading gate and within six feet of a Customs officer and within fifteen feet of several U.S. marshals. In this case, however, we are dealing with freight office clerks who, acting entirely on their own, and with no law enforcement officers nearby, decided to search when their suspicions were aroused by the consignor's appearance and mannerisms. They were looking for drugs, not explosives, when they opened the parcels. At this rate, I expect that in the future we will have to deal with an airline charwoman who decides to snoop in the dark of the night. Under the majority rule, all three are governmental agents for the purposes of the exclusionary rule. I have difficulty with this.

"The basic justification of the exclusionary rule has traditionally been that of deterring the excesses of law enforcement officers. The premise is that law enforcement officers have a professional interest in the outcome of their investigations. Deterrence is the 'single and distinct purpose' of the rule. *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 413 [86 S.Ct. 459, 15 L.Ed.2d 453] (1966). The majority recognizes this in its reference, by footnote, to the attitude in favor of prospective, rather than retrospective, application of the rule.

"How is such deterrence effected by applying the rule across the board to all airline-employee searches? There is nothing to suggest that these freight office clerks had any authority, or even *thought* they had any authority, as law enforcement officers. Indeed, when they found the contraband they immediately called in someone who they thought did have such authority. It strains reason to believe that these clerks (much less the charwoman) would, in the future, be significantly affected by any court imposing or declining to impose the exclusionary rule.

"No one having any law enforcement authority (either as a public official or as an employee of the airline) entered the picture until the search was completed. The majority's rationale applying the exclusionary rule to this case leads to results that are more destructive than constructive of responsible law enforcement.

"If we are to be really in touch with the deterrent purpose of the exclusionary rule, we would view each case on its own facts to determine the scope of authority of the searching employee. To what extent is he employed for law enforcement purposes? We would inquire further to determine, regardless of his stated authority, whether he has been used by law enforcement officers as an extension of themselves. Has anyone with law enforcement authority suggested or initiated or participated in the search? We should attach no presumption; we should determine the actual facts.

"Finally, if the majority's view is accepted for purposes of the exclusionary rule, then we can expect hard questions in other areas. If, as the majority appears to hold, any search by any airline employee, regardless of motivation, and regardless of authority, constitutes governmental action for purposes of the Fourth Amendment, will we not soon be asked to define such activity as governmental action under the Civil Rights Act?

"The majority opinion cannot be squared with *United States v. Freeland*, 562 F.2d 383 (6th Cir. 1977) (No. 76–2476, Sept. 14, 1977). Our two circuits are now in direct opposition on this issue.

"I withdraw my concurrence and I dissent from the denial of the petition for rehearing."

Circuit Judges Koelsch and Hufstedler, of the original panel, voted to deny the peti-

tion for rehearing before the panel. Thereupon, a majority of the court voted to take the cases en banc. As to that, believing that en banc was not desirable, I placed the following second dissent in the files:

"CHAMBERS, Circuit Judge, dissenting from Order taking case en banc:

"Things necessarily get a little upside down when one who lost in a panel of three turns up protesting that the case is now going en banc before the entire court.

"In my view, taking this case en banc is like going up in the air without a payload. This case or a younger brother or sister of it will necessarily get to the Supreme Court. So I dissent for the same reason stated by Judge Kaufman in *Eisen v. Carlisle and Jacquelin*, 479 F.2d 1005 at 1020 (2 Cir. 1973)."

Judge Koelsch of the majority on the panel, and I, the minority, have elected not to sit on the cases en banc, but I do want my view of record.